UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

REDKING FOODS LLC,                                    Case No. 13-CV-0002 (PJS/JSM)

                    Plaintiff,

v.                                                                    ORDER

MINN ASSOCIATES LP,

                    Defendant.

Jessica L. Roe, BASSFORD REMELE, for plaintiff.

Eric A.O. Ruzicka, Mariah L. Reynolds, and Hugh D. Brown, DORSEY & WHITNEY
LLP, for defendant.

Defendant Minn Associates LP ("Minn Associates") owns commercial real estate in

Minnetonka, Minnesota.  Plaintiff RedKing Foods LLC ("RedKing") leases a portion of that real

estate from Minn Associates and operates a Burger King restaurant on the leased property.  Minn

Associates and RedKing are embroiled in a dispute over two aspects of their lease agreement.

First, the parties disagree about whether RedKing is entitled to maintain a pylon sign on Minn

Associates' property.  Second, the parties disagree about the extent to which RedKing is

responsible for paying the taxes assessed against Minn Associates' property.

        This matter is before the Court on the parties' cross-motions for summary judgment.  For

the reasons provided below, Minn Associates' motion is granted in part and denied in part, while

RedKing's motion is denied.

## I.  BACKGROUND

### *A.  Signage Rights*

Minn Associates owns approximately 13 acres of commercial real estate near the intersection of State Highway 7 and County Road 101 in Minnetonka.  *See* Am. Compl. ¶¶ 6-7, 16 [ECF No. 23]; Second Roe Decl. Ex. J [ECF No. 41 at 1].  From 1973 until 1998, only one building was located on the real estate.  *See* Second Haddad Decl. ¶ 3 [ECF No. 16].  Kmart Corporation ("Kmart") leased the entire property from Minn Associates and operated a retail store in the building.  *Id.*

With Kmart's consent, Minn Associates and The Westwind Group of Minnesota, Inc. ("Westwind") agreed in 1996 that Westwind would lease approximately .69 acres (or 29,955 square feet) of the real estate that previously had been leased by Kmart.  *See* Reynolds Decl. Ex. 2 ("Lease") [ECF No. 62-2]; Reynolds Decl. Ex. 3 ("Consent Agreement") [ECF No. 62-3].  The parties contemplated that Westwind would construct and operate a Burger King restaurant on the "Demised Premises" — that is, on the portion of the property ceded by Kmart and leased from Minn Asssociates by Westwind.  Lease at 1, 7; *see also* Consent Agreement at 1.[1]  The lease also gave Westwind the right "to install and maintain a free standing pylon sign on the Demised Premises . . . in accordance with all applicable laws and governmental regulations."  Lease at 13-14.

Westwind, in turn, assigned its interest in the lease to RedKing.  *See* Reynolds Decl. Ex. 4 [ECF No. 62-4].  RedKing completed the construction of the Burger King restaurant, *see*

---

[1]For these and any other documents in which the ECF pagination at the top of the page differs from the document's pagination at the bottom, the Court cites to the document's pagination.

Reddin Dep. 32-33 [ECF No. 62-5], and applied to the City of Minnetonka for permission to construct a pylon sign on the Demised Premises, *see* Reynolds Decl. Ex. 8 [ECF No. 62-8].

Before receiving a response from the City, RedKing was notified by Kmart that construction of a pylon sign on the Demised Premises would interfere with Kmart's own signage rights under its lease with Minn Associates. *See* Reynolds Decl. Ex. 9 [ECF No. 62-9]; Reddin Decl. ¶¶ 3-4 [ECF No. 67]. This is because the City of Minnetonka prohibits more than one pylon sign on a single real-estate development, *see* Minnetonka Code of Ordinances 300.30, and the commercial real estate owned by Minn Associates was considered a single development by the City despite having been partitioned between Kmart and RedKing, *see* Reddin Decl. ¶ 3. Kmart proposed to RedKing that the two businesses jointly apply for permission to construct one large, shared pylon sign that would replace Kmart's existing pylon sign. *See* Reynolds Decl. Ex. 9; Reddin Decl. ¶ 4. Minnetonka approved this joint application, and the large pylon sign was constructed on Kmart's portion of the property — that is, outside of the Demised Premises. Reddin Aff. ¶¶ 8-10 [ECF No. 13]. Kmart and RedKing shared the large pylon sign for approximately a decade, with each business displaying a panel covering half of the sign. *See* First Haddad Decl. ¶ 6 [ECF No. 3]

Kmart's lease with Minn Associates terminated in 2009. *Id*. ¶ 7. No long-term tenants replaced Kmart until 2012, and RedKing continued to display the panel for its Burger King restaurant on the pylon sign throughout this period. Second Haddad Decl. ¶¶ 6, 9.

In 2012, two tenants entered into agreements with Minn Associates to lease portions of the building formerly occupied by Kmart. *Id*. ¶¶ 7-8. Both of those lease agreements provided the new tenants with the right to maintain panels on the pylon sign. *Id*. Shortly after the new

tenants began leasing the property, Minn Associates removed the Burger King panel from the pylon sign and installed panels for the two new tenants.  *Id.* ¶ 9.

### B. Taxes

The lease agreement between Minn Associates (the Lessor) and RedKing (the Lessee) requires RedKing to pay "all real property taxes . . . which shall or may during the term of this Lease be assessed, levied, charged, confirmed, or imposed upon . . . the Demised Premises or any part thereof . . . ."  Lease at 5 (defining "Impositions").  Pursuant to the lease, the taxes owed on the Demised Premises are to be measured as follows:

> Lessee shall pay to Lessor . . . all taxes attributable to the improvements and personal property constructed or located on the Demised Premises, together with Lessee's proportionate share of the Impositions attributable to the Property.  The allocation of such Impositions between the Demised Premises and the remainder of the Property shall . . . be based upon the allocation made by the governmental entity assessing the Property or imposing the Imposition or, if there be none, on the basis of the ratio of the square footage of all buildings constructed within the Demised Premises to the square footage of all buildings on the Property.

*Id.* at 6.  In addition, the lease requires that RedKing "diligently pursue and use its best efforts to secure a separate tax assessment of its Demised Premises."  *Id.*

At all times that Minn Associates has owned the real estate — including the period of time before either Kmart or RedKing leased any portion of that real estate — the real estate has been partitioned into two separate tax parcels.  *See* Cohen Dep. 97 [ECF No. 62-1].  The smaller of these parcels —  identified in the record as Parcel No. 29.117.22.23.0004 — comprises about one-quarter of the land owned by Minn Associates.  The Court will refer to this smaller tax parcel as the "'04 Parcel."  *See* Second Roe Decl. Ex. J.  The larger of these parcels — identified

-4-

in the record as Parcel No. 29.117.22.32.0006 — comprises about three-quarters of the land owned by Minn Associates.  The Court will refer to this larger tax parcel as the "'06 Parcel."  *Id*.

Most of the Demised Premises are located within the '04 Parcel.  But the Demised Premises make up less than half of the '04 Parcel, and a portion of the Demised Premises is located within the '06 Parcel.  Thus, the boundary between the '04 Parcel and the '06 Parcel is not the same as the boundary between the "Kmart" portion of the real estate and the "RedKing" portion.  *Id*.  The one boundary has no relationship to the other.

Prior to the commencement of this lawsuit, neither RedKing nor Minn Associates sought a separate tax assessment of the Demised Premises.  Instead, Minn Associates forwarded the assessment for the entire '04 Parcel to RedKing (even though, as noted, RedKing occupied less than half of the '04 Parcel), and RedKing paid the property taxes imposed on the '04 Parcel in full.  *See* Third Roe Decl. Ex. I [ECF No. 66-9].  RedKing alleges that this arrangement resulted in it paying more in property taxes than the lease requires, as the lease requires RedKing to pay taxes only on the Demised Premises, and the Demised Premises comprise only a fraction of the '04 Parcel.

Moreover, says RedKing, the lease explains exactly how RedKing's obligation to pay property taxes is to be determined.  As an initial matter, if a governmental entity has made an allocation between the Demised Premises and the remainder of the property, that allocation is controlling.  But no such allocation was ever made.  Therefore, argues RedKing, the lease calls for an allocation "on the basis of the ratio of the square footage of all buildings constructed within the Demised Premises to the square footage of all buildings on the Property."  Lease at 6.

RedKing contends that the difference between the taxes that it actually paid and the taxes that it

was required to pay under the lease was $221,668.91 from 2005 to 2013.[2]   *See* ECF No. 64 at 15.

### C.  Procedural History

RedKing's original complaint asserted four counts against Minn Associates, each related

to the dispute over the pylon sign.  In Count One, RedKing sought an injunction forcing Minn

Associates to permit RedKing to display its Burger King panel on the existing pylon sign.  *See*

Compl. ¶¶ 26-32 [ECF No. 1-1 at 4-11].  In Count Two, RedKing sought monetary damages for

Minn Associates' alleged breach of the lease agreement with respect to the existing pylon sign.

*Id*. ¶¶ 33-37.  And in Counts Three and Four, RedKing sought declarations that it had certain

rights to the existing pylon sign.  *Id*. ¶¶ 38-51.

RedKing later amended its complaint, leaving Counts One through Four substantially

unchanged and adding a fifth count alleging that Minn Associates breached the lease by

forwarding the tax bills for the entire '04 Parcel to RedKing and thereby causing RedKing to pay

more in taxes than the lease requires.[3]   *See* Am. Compl. ¶¶ 50-56.  RedKing has since withdrawn

Count One.  *See* ECF No. 64 at 1 n.1.  Minn Associates now moves for summary judgment on

---

[2]RedKing alleges that it has paid taxes on the '04 Parcel since its assumption of the lease in 1998.  *See* Am. Compl. ¶ 53; ECF No. 64 at 12-13.  But RedKing seeks to recover only overpayments made since 2005.  *See* ECF No. 64 at 14-15.  At oral argument, RedKing explained that it was not seeking to recover overpayments made prior to 2005 because it could not find the relevant tax records for those years and therefore could not prove that it had paid more than the lease required.

[3]RedKing previously moved to amend its complaint a second time, seeking to add claims alleging (1) that Minn Associates breached the implied covenant of good faith and fair dealing and (2) that the contract should be reformed.  *See* ECF No. 34.  This motion was denied by Magistrate Judge Janie S. Mayeron on August 2, 2013.  *See* ECF No. 53.

the four remaining counts, while RedKing moves for summary judgment on the three remaining

counts relating to RedKing's rights to the pylon sign.

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  A dispute over a fact is "material" only if its resolution might affect the outcome

of the lawsuit under the substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party."  *Id.*  "The evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

### B.  Signage Rights

The lease entitles RedKing "to install and maintain a free standing pylon sign on the

Demised Premises . . . in accordance with all applicable laws and governmental regulations."

Lease at 13-14.  In its briefing, RedKing contended that Minn Associates breached the lease by

removing RedKing's panel from the pylon sign and by allowing the two tenants that replaced

Kmart to place their own panels on the pylon sign.  But the pylon sign sits on the property

formerly leased by Kmart — that is, *outside* of the Demised Premises.  And nothing in the lease

entitles RedKing to signage rights outside of the Demised Premises.

When the Court pressed RedKing on this point at the hearing on the summary-judgment

motions, RedKing abandoned its claim that it is entitled to put a panel on the existing pylon sign,

and instead argued that Minn Associates is obligated to *tear down* the existing pylon sign so that

RedKing can construct its own pylon sign on the Demised Premises.  Specifically, RedKing argued that by maintaining the pylon sign, Minn Associates is depriving RedKing of the right to construct its own pylon sign — a right specifically promised by Minn Associates in its lease with RedKing — because the City of Minnetonka will not permit RedKing to construct a pylon sign on the Demised Premises as long as Minn Associates maintains the existing pylon sign.  After Kmart's lease expired, Minn Associates had the unfettered right to tear down the existing pylon sign, and thereby fulfill its promise to RedKing that it could erect a pylon sign on the Demised Premises.  Therefore, says RedKing, Minn Associates should be ordered to tear down the existing sign.

At first blush, this appears to be a good argument.  The problem, though, is that RedKing made this argument for the first time — and then, just barely — in its reply brief.  Nowhere in RedKing's lengthy opening brief did RedKing even hint that it had the right to force Minn Associates to tear down the existing pylon sign.  *See* ECF No. 64.  Instead, RedKing argued solely that Minn Associates was obligated to restore RedKing's panel.  Naturally, because RedKing did not argue that Minn Associates had to tear down the existing pylon sign, Minn Associates did not address the issue in its response to RedKing.  RedKing then filed its reply, which included the following sentence on the seventh page of the 15-page brief:  "The obvious intent is not being effectuated here unless the terms of the lease are upheld and RedKing is either granted rights to the current pylon sign or the sign is taken down and RedKing is allowed to put up its own sign on its Demised Premises."  ECF No. 72 at 7.  RedKing did not further elaborate on this statement or cite any case law in support of its suggestion that the law may require that "the sign is taken down."

By raising this argument for the first time in its reply brief, RedKing violated Local

Rule 7.1(c)(3)(B), which provides that "[a] reply memorandum must not raise new grounds for

relief or present matters that do not relate to the opposing party's response."  Moreover, "federal

courts do not, as a rule, entertain arguments made by a party for the first time in a reply brief."

*Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd.*, 491 F. Supp. 2d 871, 878 (D. Minn. 2007).  This is

true both in the Eighth Circuit[4] and in this Court.[5]  *See Smith v. United States*, 256 Fed.

Appx. 850, 852 (8th Cir. 2007) ("the district court did not err in dismissing claims raised for the

first time in a . . . reply brief.").

---

[4]*See, e.g.*, *United States v. Wilkens*, No. 12-3990, 2014 WL 464064, at *3 n.2 (8th Cir. Feb. 6, 2014) ("'[W]e generally do not address issues and arguments asserted for the first time in a reply brief.'") (quoting *Giove v. Stanko*, 49 F.3d 1338, 1344 n.4 (8th Cir. 1995)); *United States v. Picardi*, 739 F.3d 1118, 1123 n.3 (8th Cir. 2014) ("Generally, we do not consider arguments raised for the first time in a reply brief . . . .") (citing *United States v. Griggs*, 71 F.3d 276, 282 (8th Cir. 1995)); *United States v. Morris*, 723 F.3d 934, 942 (8th Cir. 2013) ("Appellants raise this argument for the first time in their reply brief, and 'we do not generally consider new arguments raised in a reply brief.'") (quoting *United States v. Vincent*, 167 F.3d 428, 431 (8th Cir. 1999)); *United States v. Shirley*, 720 F.3d 659, 664 n.3 (8th Cir. 2013) ("We do not consider arguments first raised in a reply brief.") (citing *United States v. Chalupnik*, 514 F.3d 748, 752 n.1 (8th Cir. 2008)).

[5]*See, e.g.*, *Prince v. Electrolux Home Products, Inc.*, Case No. 13-CV-2316 (DWF/LIB), 2014 WL 583412, at *6 n.5 (D. Minn. Feb. 14, 2014) ("Because this argument was raised for the first time in the reply, the Court does not consider it."); *U.S. Water Servs., Inc. v. Watertech of Am., Inc.*, Case No. 13-CV-1258 (PJS/JSM), 2013 WL 5503725, at *2 (D. Minn. Oct. 3, 2013) ("The Court will not consider a claim made for the first time in a reply brief."); *United States v. Jeanpierre*, Case No. 07-CR-0439 (JNE/SRN), 2012 WL 4898182, at *2 (D. Minn. Oct. 16, 2012) ("Because Jeanpierre first raised this argument in his reply brief, the Court need not address it."); *Cold Spring Granite Co. v. Matthews Int'l Corp.*, Case No. 10-CV-4272 (JRT/LIB), 2011 WL 4549417, at *2 n.2 (D. Minn. June 1, 2011) ("The Court generally does not consider arguments made for the first time in a reply brief."); *FCA Constr. Co., LLC v. Singles Roofing Co., Inc.*, Case. No. 09-CV-3700 (ADM/AJB), 2011 WL 1778901, at *1 n.1 (D. Minn. May 10, 2011) ("Because Durchslag raised the insufficiency of the pleading issue for the first time in his reply brief and FCA Construction has not had an adequate opportunity to respond, the Court declines to consider this issue.").

There is no reason to make an exception to the general rule for RedKing. In January 2013, RedKing moved for a temporary restraining order forcing Minn Associates to reinstall RedKing's panel on the existing pylon sign. At the hearing on that motion, the Court told RedKing that it was not likely to succeed on its claim that it had a right to place its panel on the existing pylon sign. But the Court told RedKing that it had a better argument: Minn Associates was obligated to tear down the existing pylon sign so that RedKing could exercise the right specifically given to RedKing in its lease to construct a pylon sign on the Demised Premises. Given that the *judge* brought this argument to RedKing's attention — and did so over a year ago — it is difficult to imagine why this argument was not the centerpiece of RedKing's opening brief. But for reasons known only to RedKing, it relegated this argument to a fragment of a sentence buried in the middle of its reply brief. RedKing had a good argument, but it chose not to make it, and it must live with the consequences.

For these reasons, the Court holds that RedKing has no right to display a panel on the existing pylon sign or to force Minn Associates to tear down that sign. Accordingly, Minn Associates' motion for summary judgment with respect to Counts Two, Three, and Four of the amended complaint is granted, and RedKing's motion for summary judgment is denied.

*C. Taxes*

The lease requires RedKing to "diligently pursue and use its best efforts to secure a separate tax assessment of its Demised Premises." Lease at 6. The lease further provides that RedKing must pay any property taxes specifically allocated to the Demised Premises. If no such "separate tax assessment" is imposed, then RedKing's responsibility for taxes is calculated "on the basis of the ratio of the square footage of all buildings constructed within the Demised

Premises to the square footage of all buildings on the Property." *Id*. The Court will refer to this as the "square-footage method."

RedKing argues that no separate tax assessment was ever imposed on the Demised Premises, and thus its responsibility to pay taxes should have been calculated pursuant to the square-footage method. Instead, says RedKing, Minn Associates charged it for all of the taxes imposed on the '04 Parcel — charges that far exceeded the amounts that RedKing was required to pay under the lease. Specifically, RedKing alleges that, from 2005[6] through 2013, RedKing paid $221,668.91 more in property taxes than it was required to pay pursuant to the square-footage method. ECF No. 64 at 15; Reddin Decl. ¶¶ 17-19. RedKing now seeks to recover that overpayment from Minn Associates.

Minn Associates offers three main arguments in response:

First, Minn Associates contends that the allocation between the '04 Parcel and the '06 Parcel *is* an allocation between the Demised Premises and the remainder of the property, with the allocation to the '04 Parcel representing the taxes owed on the Demised Premises. But this is plainly wrong. The division of Minn Associates' property into separate tax parcels occurred long before the Demised Premises were even created. *See* Cohen Dep. 97. And, as the Court has taken pains to explain, the border separating the '04 Parcel from the '06 Parcel bears no

---

[6]The complaint in this case was filed in state court and served on Minn Associates on December 31, 2012. ECF No. 1 ¶ 2. The limitations period for a breach-of-contract claim under Minnesota law is six years. *See* Minn. Stat. § 541.05(1). Thus, at least a portion of RedKing's breach-of-contract claim with respect to property taxes would seem to be time barred. But Minn Associates did not raise this issue in its briefing — and, more importantly, Minn Associates did not raise this issue in its answer to the amended complaint, even though a statute-of-limitations defense must be affirmatively pleaded under Fed. R. Civ. P. 8(c).

relationship to the border separating the Demised Premises from the rest of Minn Associates' property.  The Demised Premises are not remotely equivalent to the '04 Parcel.

Second, Minn Associates emphasizes that the lease requires RedKing to "diligently pursue and use its best efforts to secure a separate tax assessment of its Demised Premises." Lease at 6.  It is undisputed that RedKing did nothing to "secure a separate tax assessment of its Demised Premises" (at least not until after it filed this lawsuit), and thus RedKing clearly did not use its "best efforts," as the lease requires.[7]  Minn Associates argues that this failure to use "best efforts" precludes RedKing from now arguing that it paid more in taxes than was required under the lease.

The problem with Minn Associates' argument is that the lease does not address the situation in which the parties now find themselves.  On its face, the lease contemplates only three scenarios:

- First, the lease explains what happens if RedKing uses its best efforts and is successful in securing a separate tax assessment:  RedKing pays taxes pursuant to that assessment.  *See* Lease at 6.

- Second, the lease explains what happens if RedKing uses its best efforts and is not successful in securing a separate tax assessment:  The square-footage method is used to determine RedKing's tax liability.  *See id.*

- Third, the lease explains what happens if RedKing does not use its best efforts, but a "governmental entity" nevertheless allocates the tax burden "between the Demised Premises and the remainder of the Property": RedKing pays taxes pursuant to that allocation.  *Id.*

---

[7]RedKing argues that the term "best efforts" is ambiguous, and thus the question of whether it used best efforts in securing a separate tax assessment of the Demised Premises should be left to a jury.  But RedKing made *no* efforts to secure a separate tax assessment, and thus it cannot be disputed that RedKing failed to use its *best* efforts to do so — whatever "best efforts" means.

-12-

The lease is simply silent about what happens if (1) RedKing does not use its best efforts and (2) a governmental entity does not allocate the tax burden between the Demised Premises and the remainder of Minn Associates' property.  In other words, the only scenario that the lease does not address is the scenario that now confronts the parties.  Because the lease fails to address this scenario, the lease is ambiguous, and because the lease is ambiguous, a jury will have to decide what the lease requires of RedKing.

Finally, Minn Associates argues that RedKing waived its right to allege that it paid more in taxes than was required of it under the lease.  Minn Associates points out that RedKing could have sought a separate tax assessment at any time — indeed, that RedKing was *obligated* to seek a separate tax assessment under the terms of the lease.  But instead of securing a separate tax assessment, RedKing paid taxes on the entire '04 Parcel year after year, without ever complaining that it was paying more than required under the lease.

Waiver "is the intentional relinquishment of a known right."  *White v. City of Elk River*, 840 N.W.2d 43, 51 (Minn. 2013).  "[A] valid waiver requires two elements:  (1) knowledge of the right, and (2) an intent to waive the right."  *Frandsen v. Ford Motor Co.*, 801 N.W.2d 177, 182 (Minn. 2011).  A party's intent to waive a right may be inferred from its conduct.  *See Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 367 (Minn. 2009) ("When a party acts in a way that is inconsistent with the terms of a contract, a fact finder can reasonably conclude that a party waived those contractual provisions.").  But the Minnesota Supreme Court has emphasized that "[w]aiver generally is a question of fact, and it is rarely to be inferred as a matter of law."  *Id.* (internal quotations omitted).

This is not the "rare[]" case in which the Court can find waiver as a matter of law. The Court can assume that RedKing had at least constructive knowledge of its obligation to use best efforts to seek a separate tax assessment of the Demised Premises. But the record is silent about why RedKing failed to do so — and, in particular, about whether RedKing intended to waive its right to pay no more taxes than the lease required. Minn Associates has the burden to establish that RedKing both knew of its right and intended to waive it, *Frandsen*, 801 N.W.2d at 182, and the Court cannot find that Minn Associates has met that burden on the basis of this record.

The Court notes, in fact, that the record provides at least a couple of reasons to believe that RedKing did *not* intentionally relinquish its right to pay only the taxes due under the lease. First, as the Court has already explained, the lease is ambiguous on the question of what happens if RedKing does not use its best efforts and a governmental entity does not separately assess the Demised Premises. Because the lease is ambiguous, RedKing could not know — at least with any degree of confidence — what legal consequences would follow if it failed to use its best efforts. Second, as this Court pointed out in another case:

> BFI had no *reason* to waive its right. In cases in which waiver through conduct is found, the waiving party generally has an incentive to relinquish a contractual right. For example, if a party is making a lot of money under a contract, it is easy to perceive that party's continued performance of the contract after the party had the right to void the contract as strong evidence that the party intended to waive its right. In this case, it is difficult to think of any reason why BFI would have intentionally relinquished a right to void an obligation to pay over $2 million for space at the Freeway Transfer Station that it did not need and was not using.

*BFI Waste Sys. of North Am. LLC v. Freeway Transfer, Inc.*, 867 F. Supp. 2d 1037, 1044 (D. Minn. 2012) (citations omitted). A similar point can be made here: Why would RedKing

-14-

knowingly give up a right to pay *less* taxes and voluntarily agree to pay *more* taxes?  For these reasons, a jury will have to decide whether RedKing waived its right to make only the tax payments required under the lease when it repeatedly paid the taxes assessed on the entire '04 Parcel.

One final note:  During much of the time in question, it was Kmart — not Minn Associates — that benefited from any overpayment of taxes by RedKing.  Under the terms of their leases, the two tenants were responsible for paying all of the taxes due on Minn Associates' property.  Accordingly, any overpayment of taxes by RedKing necessarily resulted in an underpayment of taxes by Kmart; Minn Associates did not benefit from any such overpayment.  Whether this fact will have any impact on the amount of damages that RedKing can recover from Minn Associates is another issue that will have to await trial.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The motion for summary judgment of defendant Minn Associates LP [ECF No. 58] is GRANTED IN PART and DENIED IN PART.

  a. The motion is GRANTED as to Counts One, Two, Three, and Four of the amended complaint.  Those counts are DISMISSED WITH PREJUDICE AND ON THE MERITS.

  b. The motion is DENIED as to Count Five of the amended complaint.

2.      The motion for summary judgment of plaintiff RedKing Foods LLC [ECF No. 68]

is DENIED.

Dated: February  26 , 2014                              s/Patrick J. Schiltz
                                                        Patrick J. Schiltz
                                                        United States District Judge